RICHARD R. PATCH (State Bar No. 88049)
HOWARD A. SLAVITT (State Bar No. 172840)
MANI SHEIK (State Bar No. 245487)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California  94111-4213
Telephone: 415.391.4800
Facsimile:  415.989.1663
Email:    ef-rrp@cpdb.com,
          ef-has@cpdb.com,
          ef-ms@cpdb.com

Attorneys for Defendants The Flea Market, Inc. d/b/a The San Jose Flea Market, Bumb & Associates, Brian Bumb, Timothy Bumb, George Bumb, Jr. and Patrick DeTar

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| LOUIS VUITTON MALLETIER,<br><br>            Plaintiff,<br><br>       v.<br><br>THE FLEA MARKET, INC. d/b/a THE SAN JOSE FLEA MARKET, BUMB & ASSOCIATES, BRIAN BUMB, TIMOTHY BUMB, GEORGE BUMB, JR., JEFFREY BUMB AND PATRICK DE TAR,<br><br>            Defendants. | Case No. C09-01062 CW<br><br>**DEFENDANT BUMB & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**<br><br>Date:       May 21, 2009<br>Time:       2:00 P.M.<br>Judge:      Honorable Claudia Wilken<br>Courtroom:  2, 4th Floor |

07912.006.1124836v2                                               Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................... 1

ARGUMENT. ............................................................................................................................ 3

    I.    TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, PLAINTIFF NEEDED TO ALLEGE FACTS ESTABLISHING THAT BUMB & ASSOCIATES BOTH HAD THE REQUIRED KNOWLEDGE *AND* THAT IT EXERCISED *DIRECT* CONTROL OVER THE ALLEGED PRIMARY INFRINGERS' BUSINESS OPERATIONS. ............................................................................ 3

    II.    BUMB & ASSOCIATES DID NOT EXERCISE DIRECT CONTROL OVER THE ALLEGED PRIMARY INFRINGERS' BUSINESS OPERATIONS. ........................................................................................................ 3

        A.    Plaintiff Does Not Allege That Bumb & Associates Had Any Relationship At All With The Market Vendors. ........................................... 4

        B.    Plaintiff's Boilerplate Agency Allegation Cannot Be Used To Hold Bumb & Associates Liable For Contributory Trademark Infringement. ........................................................................................... 6

        C.    Plaintiff's Group Allegations Against "Defendants" Fail To State A Claim Against Bumb & Associates. ........................................................... 8

        D.    Bumb & Associates Is Not An Alter Ego Of The Flea Market. ................. 9

    III.    BUMB & ASSOCIATES IS NOT ALLEGED TO HAVE HAD KNOWLEDGE OF PARTICULAR VENDORS AND THE PARTICULAR PRODUCTS THAT THEY WERE SELLING THAT ALLEGEDLY INFRINGED PLAINTIFF'S MARKS. ............................................................... 9

CONCLUSION. ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 2, 6

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) ..................................................................... 9

*Deutsch v. Arnold*,
  98 F.2d 686 (2d Cir. 1938) ......................................................................................... 6

*Elias Real Estate, LLC v. Tseng*,
  156 Cal. App. 4th 425 (2007) ..................................................................................... 7

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ............................................................................... 4, 5, 6

*FreecycleSunnyvale v. Freecycle Network*,
  2006 U.S. Dist. LEXIS 74767 (N.D. Cal. Oct. 3, 2006) ........................................ 3, 5

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
  955 F.2d 1143 (7th Cir. 1992) ............................................................................ *passim*

*In re McKesson HBOC, Inc. ERISA Litig.*,
  2002 U.S. Dist. LEXIS 19473 (N.D. Cal. Sept. 30, 2002) ........................................ 9

*In re Sagent Tech.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..................................................................... 9

*Inwood Labs. v. Ives Labs.*,
  456 U.S. 844 (1982) ........................................................................................ 3, 5, 10

*Johnson & Johnson Consumer Cos. v. Aini*,
  540 F. Supp. 2d 374 (E.D.N.Y. 2008) ....................................................................... 5

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F.3d 980 (9th Cir. 1999) ..................................................................................... 3

*Lovesy v. Armed Forces Benefit Ass'n*,
  2008 U.S. Dist. LEXIS 93479 (N.D. Cal. Nov. 7, 2008) .......................................... 9

*Mieuli v. DeBartolo*,
  2001 U.S. Dist. LEXIS 22518 (N.D. Cal. Jan. 16, 2001) ......................................... 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ..................................................................................... 3

07912.006.1124836v2                          ii                          Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Tiffany v. Ebay*,
    576 F. Supp. 2d 463 (S.D.N.Y 2008) .................................................................................. 10

**STATUTES & RULES**

California Corporations Code section 16305 ................................................................................ 7

California Code of Civil Procedure section 1161(4) ..................................................................... 6

Federal Rule of Civil Procedure, Rule 8 ........................................................................................ 9

07912.006.1124836v2                                         iii                                         Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Louis Vuitton Malletier ("Plaintiff" or "Louis Vuitton") has failed to plead a claim for contributory trademark infringement against defendant Bumb & Associates, which is a California partnership. To be held liable for contributory trademark infringement, Bumb & Associates must have both (a) exercised direct control over the business operations of the party that is itself primarily liable for trademark infringement, *and* (b) had the requisite degree of knowledge of the primary violator's infringing conduct. Plaintiff alleges that a few of the approximately 2,000 flea market vendors at the San Jose Flea Market (the "Market") directly infringed Plaintiff's trademarks by selling counterfeit Louis Vuitton purses or bags. Plaintiff has named a different defendant, The Flea Market, Inc. in the lawsuit because it operates and manages the Market, and it allegedly exercises specific, direct control over the business operations of the vendors who are alleged primary infringers. In contrast Bumb & Associates is not alleged to operate or manage the Market or to have otherwise exercised direct control over the business operations of the vendors. Bumb & Associates did not enter into any leases or contracts with the vendors, and has no other relationship with them.

Plaintiff has made only two specific factual allegations against defendant Bumb & Associates. First, Plaintiff alleges that Bumb & Associates is a property owner who leases property to a separate entity, defendant The Flea Market, Inc., in exchange for rent. Second, plaintiff alleges that the partnership's individual partners are shareholders, officers, and operators of The Flea Market, Inc. That is the extent of Plaintiff's specific factual allegations against Bumb & Associates in particular, as opposed to Plaintiff's allegations against "Defendants" as a group. These two allegations are inadequate to plead a claim for contributory trademark infringement against Bumb & Associates. Being a property owner that leases property to a separate and distinct entity (The Flea Market, Inc.), which in turn engages in the business of being a flea market operator and rents space to a vendor, which in turn engages in trademark violations, does not, as a matter of law, constitute an exercise of direct control by the property owner over the vendor sufficient to hold it contributorily liable for the vendor's trademark violations.

07912.006.1124836v2       1       Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1. Plaintiff's response in its Opposition brief is essentially threefold. First, Plaintiff attempts to conflate two different entities: Bumb & Associates and The Flea Market, Inc. Plaintiff emphasizes The Flea Market, Inc.'s alleged direct exercise of control over vendors' business operations, which is besides the point. Plaintiff has not alleged that Bumb & Associates and The Flea Market, Inc. are alter egos. Rather, they are alleged to be separate entities who jointly own the land, buildings, and structures at the Market. (Compl. ¶ 6.) Only The Flea Market, Inc. is alleged to operate the flea market business.

Second, Plaintiff alleges that "Defendants" as a group exercised the requisite control over the vendors. But the reliance on group pleading is belied by Plaintiff's more specific allegations. Bumb & Associates is alleged only to be a property owner. It leases the property to The Flea Market, Inc. The Flea Market, Inc. in turn operates the Market. Group allegations against all "defendants" do not suffice to state a claim when the specific factual allegations against a particular defendant do not supports its inclusion in the group. Plaintiff's allegations against Bumb & Associates do not provide notice of any grounds on which the claims against Bumb & Associates are based. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 556 n.3 (2007).

Third, Plaintiff relies on a boilerplate, conclusory allegation that each Defendant was the agent of each of the other Defendants. (Compl. ¶ 13.) But this allegation, in addition to being a mere conclusory assertion of law rather than a factual allegation (*cf. Twombly*, 550 U.S. at 556 n.3), is similarly belied by Plaintiff's more specific allegations.

No court has ever held that a property owner, twice removed from a direct trademark infringer, exercises direct control over the primary infringer's business such that it can be held liable for contributory trademark infringement. Bumb & Associates did not supply any product to the Market vendors alleged to be primary infringers. It supplied products – land and buildings – to The Flea Market, Inc., the operator of the Market, which in turn created a business and implemented it by supplying a different product, particular stall spaces, to approximately 2,000 vendors on any given day, a few of whom are alleged to have engaged in trademark violations.

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**ARGUMENT**.

**I. TO STATE A CLAIM FOR CONTRIBUTORY TRADEMARK INFRINGEMENT, PLAINTIFF NEEDED TO ALLEGE FACTS ESTABLISHING THAT BUMB & ASSOCIATES BOTH HAD THE REQUIRED KNOWLEDGE *AND* THAT IT EXERCISED *DIRECT* CONTROL OVER THE ALLEGED PRIMARY INFRINGERS' BUSINESS OPERATIONS.**

Beyond providing historical context, Plaintiff does not take issue with the legal standard for holding a defendant liable for contributory trademark infringement set forth in Bumb & Associates' opening memorandum of points and authorities (the "Motion"): A claim for contributory trademark infringement only lies when a defendant both (a) supplied a product to a third party, *and* (b) had specific knowledge that the product was being used to infringe the mark. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 (1982)).

To satisfy the "supplied a product" part of the test, Plaintiff must allege specific facts establishing that Bumb & Associates exercised "'[d]irect control and monitoring'" of the instrumentality used by a third party to infringe Plaintiff's trademarks. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999); *see also FreecycleSunnyvale v. Freecycle Network*, 2006 U.S. Dist. LEXIS 74767 at *10 (N.D. Cal. Oct. 3, 2006) (mere conclusory allegation that cross-defendant "'directly controls, monitors and holds a position of power'" that encourages infringement by others is insufficient to state a claim for contributory trademark infringement). Plaintiff must therefore allege specific facts to establish that Bumb & Associates had *direct* control over and monitored the infringing vendors' business operations.

**II. BUMB & ASSOCIATES DID NOT EXERCISE DIRECT CONTROL OVER THE ALLEGED PRIMARY INFRINGERS' BUSINESS OPERATIONS.**

No case supports the proposition that a bare property owner can be held liable for contributory trademark infringement. Moreover, here, Bumb & Associates is twice removed from the alleged primary infringers. It has no relationship at all with the Market vendors.

In its Opposition, like in the Complaint, Plaintiff conflates defendant Bumb & Associates with the other Defendants in this action. Plaintiff has not pled factual allegations to establish that Bumb & Associates exercises direct control over Market vendors. Rather than pointing to specific

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

factual allegations against *Bumb & Associates*, Plaintiff inappropriately tries to base Bumb & Associates' liability on the conduct of the other Defendants.  (*See, e.g.,* Opposition at 4 ("*Defendants* exercise strict control over the vendors and tenants who do business at the Market") (emphasis added).)[1]  But merely asserting that all the Defendants should be held liable as if they were the same person or entity, without specific factual allegations and a legal basis to support such an argumentative leap, does not suffice to state a claim for relief.

### A. Plaintiff Does Not Allege That Bumb & Associates Had Any Relationship At All With The Market Vendors.

Bumb & Associates emphasized in its opening brief that the Complaint is devoid of any specific allegation that *Bumb & Associates* exercised direct control of, or monitored the business operations of, any vendors who directly infringed Plaintiff's trademarks.  Plaintiff has not alleged that Bumb & Associates entered into any leases or other contracts with the Market vendors.  Plaintiff has not even alleged a *relationship* between Bumb & Associates and the vendors, much less that Bumb & Associates exercised direct control over their business operations.  The Opposition does not cite any specific allegations in the Complaint to dispute Bumb & Associates' argument.

Plaintiff alleges only that Bumb & Associates owns and leases property to defendant The Flea Market, Inc., in exchange for rent.  No authority supports Plaintiff's argument that a property owner may be liable for contributory trademark infringement if it only leases property to a separate and distinct entity, which in turn operates a flea market and rents space to a vendor, which in turn infringes trademarks.

Plaintiff's attempt to portray its claims against Bumb & Associates as being within the "*Hard Rock-Fonovisa* line of cases" fails.  (Opposition at 13.)[2]  *Fonovisa* and *Hard Rock* each

---

[1] Plaintiff points to the answer of the *other* Defendants in this case as proof of its claims against *Bumb & Associates*.  But, aside from the fact that the other Defendants' answer cannot bind this Defendant, the answer further evidences that not all Defendants in this case are one and the same.

[2] *See Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996).

07912.006.1124836v2   4   Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

addressed a single defendant who both owned *and* operated a swap meet or flea market. *Fonovisa*, 76 F.3d at 262-63; *Hard Rock*, 955 F.2d at 1146. Here, however, the owner (Bumb & Associates) and operator (The Flea Market, Inc.) are two distinct entities, each of which has been sued as defendants. *See Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 393, 395 (E.D.N.Y. 2008) ("two businesses may share certain expenses and even office and warehouse space and yet remain separate"). Not only does Plaintiff fail to address this dispositive distinction, its argument, based on *Hard Rock* and *Fonovisa* emphasizes the point: "*owners and operators* of a flea market (which provide the forum and facilities for their vendors' conduct) can be liable for contributory trademark infringement where they knew, or should have known, of the infringing conduct." (Opposition at 10 (emphasis added).) Plaintiff has not alleged that *Bumb & Associates* is the owner and operator of the Market — that distinction belongs to The Flea Market, Inc. (Compl. at ¶ 6.)[3]

Plaintiff argues that Bumb & Associates should be required to force its lessee, The Flea Market, Inc., to evict vendors who are allegedly direct trademark infringers, and that because Bumb & Associates has not done so, it should be held liable for contributory trademark infringement. (Opposition at 16-17.) That argument, if legally sound, would apply to any property owner. But the law is to the contrary: a property owner who does not exercise direct control over a tenant's business operations cannot be held liable for contributory trademark

---

[3] Plaintiff's attempt to distinguish the *FreecycleSunnyvale* case is unavailing. There, counterclaimant alleged that the counter-defendant both induced third parties to infringe counterclaimant's trademark and supplied a product to third parties with the knowledge that the product was being used to infringe defendant's trademark. *FreecycleSunnyvale*, 2006 U.S. Dist. LEXIS 74767 at *9-10. Under the "supplies a product" theory of liability (the only theory of liability pleaded here), this Court found that the counterclaimant "may not proceed on that theory [of liability]" because its mere allegation that the counter-defendant "'directly controls, monitors and holds a position of power,'" without any further specific factual allegations, was "insufficient" to state a claim for contributory trademark infringement. *Id.* at *10. Thus, as in *FreecycleSunnyvale*, Plaintiff has not sufficiently pleaded that Bumb & Associates was directly involved in and had *direct* control over the infringing vendors' conduct so as to be liable for contributory trademark infringement. Indeed, Plaintiff here has pleaded even *less* than the *FreecycleSunnyvale* counter-claimant, who had made (inadequate) conclusory allegations that the counter-defendant "'directly controls, monitors and holds a position of power.'"

07912.006.1124836v2   5   Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  infringement.  *Fonovisa*, 76 F.3d at 262-63; *Hard Rock*, 955 F.2d at 1148 n.4; *Deutsch v. Arnold*, 98 F.2d 686, 688 (2d Cir. 1938).

Plaintiff misplaces reliance on California Code of Civil Procedure Section 1161(4), which states that a lessee's "us[e of] the premises for an unlawful purpose, thereby terminates the lease." *Operating a flea market is not an unlawful purpose.*  Assuming, for the sake of argument, that Plaintiff proved that The Flea Market, Inc. were liable for contributory trademark infringement because of a sub-tenant vendor's primary infringement, that would not give Bumb & Associates a basis for terminating the lease for the entire flea market.  Plaintiff's zealous efforts to force others to police its trademarks goes well beyond any legal precedent or principle.

The general rule is that Plaintiff must itself expend the resources to police infringement of its trademarks.  It reaps the benefits from its marks, and Plaintiff therefore must assume the burden of enforcing them.  In narrow circumstances, where a third party has affirmative knowledge of specific infringers engaging in particular infringing activity (*see* Part III, *infra*), and the third party has *direct* control over and monitors the business operations of the primary infringer, the third party can be held liable if it fails to take reasonable measures to stop such infringement.  But a bare property owner does not exercise such control.  And, here, Bumb & Associates has not entered into a lease or contract with, and has no other relationship with, the alleged primary infringers.

### B. Plaintiff's Boilerplate Agency Allegation Cannot Be Used To Hold Bumb & Associates Liable For Contributory Trademark Infringement.

Plaintiff places heavy reliance on its boilerplate agency allegation in paragraph 13 of the Complaint – that, on information and belief, "each of the Defendants was the agent of each of the other Defendants . . . in doing the things alleged in this Complaint" – but such does not suffice.  A complaint must show on its face an entitlement to relief rather than "a blanket assertion" of such. *Twombly*, 550 U.S. at 556 n. 3.  Blanket assertions do not provide a defendant with the requisite fair notice of the factual *grounds* on which the claim rests.  *Id.*  If Plaintiff's boilerplate agency allegation were sufficient, then anytime a plaintiff had alleged a claim against one defendant, it could simply include a boilerplate agency allegation to rope in another defendant, and the second

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

defendant would be forced to answer and defend itself in litigation without fair notice of the factual grounds on which the claim rested.

Plaintiff's boilerplate agency allegation is grossly over-inclusive, and as such, fails to give Bumb & Associates fair notice of the basis of the claims against it. If every Defendant were the agent of every other Defendant (*see* Compl. ¶ 13), then it would follow, as one absurd result, that every time Bumb & Associates accepted rent payments from The Flea Market, Inc., Bumb & Associates was actually an agent of The Flea Market, Inc. It makes no sense that The Flea Market, Inc. would pay itself rent. Similarly, it would mean that when Bumb & Associates acted to lease the property to The Flea Market, Inc., Bumb & Associates was really just an agent of The Flea Market, Inc., *i.e.,* that Bumb & Associates did not own the property at all. Many other absurd results follow from Plaintiff's conclusory and over-inclusive agency allegation.

There are three defendants or groups of defendants who *hypothetically might* be agents of Bumb & Associates, but there are no factual allegations to support that any of them were. The only plausible interpretation of Plaintiff's specific factual allegations is that they were not.

First, The Flea Market, Inc. is not an agent of Bumb & Associates regardless of the boilerplate agency allegation in paragraph 13 of the Complaint. The Flea Market, Inc. is alleged to pay "substantial sums of money to Bumb & Associates for the lucrative privilege of leasing the Property" to Market vendors. (Compl. ¶ 7.) The Flea Market, Inc. is a lessee of Bumb & Associates, not its agent. Moreover, Plaintiff alleges no facts sufficient to hold Bumb & Associates liable as an alter ego of The Flea Market, Inc. *See* Part II.D, *infra.*

Second, Plaintiff alleges that Bumb & Associates should be held liable for the conduct of its individual partners, Defendants Brian Bumb, Timothy Bumb and George Bumb. (Compl. ¶ 7.) However, as discussed in Bumb & Associates' opening brief (*see* Motion at 9-11), a partnership is only liable for an individual partner's conduct when (a) the conduct is in the ordinary course of the partnership's business (here, owning and leasing land), or (b) the conduct was specifically authorized in writing by the other partners. Cal. Corp. Code § 16305; *Elias Real Estate, LLC v. Tseng*, 156 Cal. App. 4th 425, 432-33 (2007). The individual partners' alleged conduct for which Plaintiff apparently seeks to hold Bumb & Associates liable – their roles in operating the Market,

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1 including their alleged control over the Market vendors' business operations, and the Flea Market, Inc.'s specific leases and relationships with particular Market vendors – does not fall within Bumb & Associates ordinary course of business.  When the individual partners are operating the Market, they are conducting their employer's, *The Flea Market, Inc.'s*, business.  In the Opposition, Plaintiff fails to respond at all to this argument, thereby conceding the issue.[4]

Third, Plaintiff might hypothetically be seeking to hold Bumb & Associates liable for Defendant DeTar's conduct through the boilerplate agency allegation.  But, unlike the other individual defendants, DeTar is not even alleged to be a partner of Bumb & Associates.  Rather DeTar is alleged to be in charge of The Flea Market, Inc.'s relationship with its vendors and tenants and is the primary contact person "with respect to the leasing of space from The Flea Market, Inc."  (Compl. ¶ 12; *see id.* ("DeTar is one of the moving, active and conscious forces behind the operations, actions and inaction of The Flea Market, Inc. and the Market.")[5]  DeTar is alleged to be an agent of The Flea Market, Inc., not Bumb & Associates.

### C. Plaintiff's Group Allegations Against "Defendants" Fail To State A Claim Against Bumb & Associates.

Similarly, Plaintiff's blanket allegations in paragraphs 26-48 of the Complaint against simply "Defendants," without specifying in particular which Defendant it alleges participated in which conduct, do not suffice to provide Bumb & Associates with fair notice of the grounds on which the claims against it rest.  This is especially true because whereas, for the other Defendants, there is at least *some* (albeit arguably inadequate) basis for connecting the dots to infer why they are being named as Defendants – each is an officer, shareholder or manager of The Flea Market, Inc., which is alleged to have a direct relationship with the vendors who are alleged to be the

---

[4] To hold liable Bumb & Associates liable for contributory trademark infringement, Plaintiff must allege both (a) its *knowledge* and (b) its control and monitoring of the primary infringers' business operations.  *See* Part I, *supra*.  Plaintiff only argues that the *knowledge* of Bumb & Associates' individual partners should be imputed to the partnership (*see* discussion at Part III, *infra*), but it has conceded that the partners' *conduct* cannot be imputed to the partnership.

[5] Only The Flea Market, Inc. is alleged to operate the Market. (Compl. ¶ 6.)

1 primary infringers of Plaintiff's trademarks – there is no plausible legal nexus between the vendors
2 and Bumb & Associates.

3 In its opening brief, Bumb & Associates cited three cases for the principle that Federal Rule 8 "sets a minimum threshold of defendant-by-defendant specificity that a plaintiff must meet" and that grouping all defendants and alleging group liability does not satisfy this standard. *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005); *see also In re Sagent Tech.*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003); *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 U.S. Dist. LEXIS 19473, at *48-49 (N.D. Cal. Sept. 30, 2002); Motion at 12. In the Opposition, Plaintiff ignores these cases.

### D. Bumb & Associates Is Not An Alter Ego Of The Flea Market.

The Opposition emphasizes *The Flea Market, Inc.'s* alleged direct exercise of control over its vendors' business operations. But that argument misses the point. The Flea Market, Inc. is not Bumb & Associates, and Plaintiff has not alleged that Bumb & Associates is the alter ego of The Flea Market, Inc.

Plaintiff's vague allegation that The Flea Market, Inc. and Bumb & Associates are "closely related to each other" does not suffice to assert an alter ego theory. (Compl. ¶ 6.) The Complaint does not even use the term alter ego, and, even if it did, and even if it had recited the legal elements of an alter ego claim, without specific factual allegations, such would not suffice to support an alter ego theory. *Lovesy v. Armed Forces Benefit Ass'n*, 2008 U.S. Dist. LEXIS 93479, *11 (N.D. Cal. Nov. 7, 2008) (merely asserting that a defendants is an "alter ego" of another is "a conclusory recitation of the elements of alter ego liability" and is "insufficient" under Rule 8); *Mieuli v. DeBartolo*, 2001 U.S. Dist. LEXIS 22518 at *27 (N.D. Cal. Jan. 16, 2001) ("At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss").

### III. BUMB & ASSOCIATES IS NOT ALLEGED TO HAVE HAD KNOWLEDGE OF PARTICULAR VENDORS AND THE PARTICULAR PRODUCTS THAT THEY WERE SELLING THAT ALLEGEDLY INFRINGED PLAINTIFF'S MARKS.

In addition to having failed to allege Bumb & Associates' direct control over the business operations of the direct trademark infringers, Plaintiff does not allege Bumb & Associates' *specific*

07912.006.1124836v2  9  Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

knowledge of *particular* infringement by *particular* vendors such that an affirmative duty to act could be imposed on it, even assuming it had direct control over Market vendors' business operations.

      First, after stating that knowledge of a primary trademark violation is an essential element of a claim for contributory infringement, Plaintiff only cites to *group allegations* against "Defendants" to support this element.  (Opposition at 13 (citing Compl. at ¶¶ 13, 26-34).) Plaintiff's argument assumes, without citing any authority, that the knowledge of the partnership's individual partners can be imputed in these circumstances to the partnership, Bumb & Associates. Moreover, Plaintiff has not alleged that any of the individual partners have actual knowledge of specific instances of trademark infringement by particular primary violators.  Plaintiff assumes that to plead a claim for contributory trademark infringement against a partnership, it need only allege that an individual partner has general knowledge of potential trademark infringement obtained while the partner was employed by a separate entity and outside the scope of the partnership's ordinary business.

      Second, even if the individual partners' knowledge can be imputed to the partnership, general knowledge that some vendors might be selling counterfeit goods at the Market, without knowledge of the particular vendors and particular products they are selling that are allegedly counterfeit,  does not suffice to impose an *affirmative duty* on the partnership to take measures to remedy the problem. *Tiffany v. Ebay*, 576 F. Supp. 2d 463, 507-08 (S.D.N.Y 2008); *id.* at 511 ("…eBay had *generalized knowledge* of infringement by sellers using its website.  Such general knowledge, however, does not require eBay to take action to discontinue supplying its service to all those who *might* be engaged in counterfeiting. . .  The Court concludes that Tiffany's general allegations of counterfeiting failed to provide eBay with the knowledge required under *Inwood*." (emphases in original) (*citing Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 855 (1982)); *Hard Rock*, 955 F.2d at 1149 (defendant "has no affirmative duty to take precautions against the sale of counterfeits" or "to seek out and prevent violations").  Plaintiff's Complaint lacks factual allegations establishing Bumb & Associates' specific knowledge of particular trademark violations.

07912.006.1124836v2     10     Case No. C09-01062 CW

**DEFENDANT BUMB & ASSOCIATES' NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**CONCLUSION**.

To state a claim for contributory trademark infringement against Bumb & Associates, Plaintiff must allege specific facts establishing that Bumb & Associates both (a) exercised direct control over and monitored the business operations of the party who is itself primarily liable for trademark infringement, *and* (b) had the requisite degree of knowledge of the primary violator's infringing conduct. Plaintiff has not alleged facts supporting either element of the claim.

For the foregoing reasons, defendant Bumb & Associates respectfully requests that this Court grant its motion to dismiss all claims against it without leave to amend.

DATED:  May 7, 2009                        COBLENTZ, PATCH, DUFFY & BASS LLP

By:   /s Howard Slavitt /s
       HOWARD A. SLAVITT
       Attorneys for Defendants The Flea Market, Inc. d/b/a The San Jose Flea Market, Bumb & Associates, Brian Bumb, Timothy Bumb, George Bumb, Jr. and Patrick DeTar