RICHARD R. PATCH (State Bar No. 88049)
HOWARD A. SLAVITT (State Bar No. 172840)
MANI SHEIK (State Bar No. 245487)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California  94111-4213
Telephone: 415.391.4800
Facsimile:  415.989.1663
Email:   ef-rrp@cpdb.com,
         ef-has@cpdb.com,
         ef-ms@cpdb.com

Attorneys for Defendants THE FLEA MARKET,
INC. D/B/A THE SAN JOSE FLEA MARKET,
BUMB & ASSOCIATES, BRIAN BUMB,
TIMOTHY BUMB, GEORGE BUMB, JR., and
PATRICK DETAR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER,<br><br>      Plaintiff,<br><br>v.<br><br>THE FLEA MARKET, INC. d/b/a THE SAN JOSE FLEA MARKET, BUMB & ASSOCIATES, BRIAN BUMB, TIMOTHY BUMB, GEORGE BUMB, JR., JEFFREY BUMB AND PATRICK DETAR,<br><br>      Defendants. | Case No. C09-01062 CW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT**<br><br>Date:        July 14, 2009<br>Time:        2:00 p.m.<br>Judge:       Hon. Claudia Wilken<br>Courtroom:   2 |

07912.006.1187138v1                                    1                              Case No. C09-01062 CW
**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT**

Pursuant to the Court's Case Management Conference Order, Civil Local Rule 16-9, and the Court's Standing Order regarding the contents of Joint Case Management Statements, Plaintiff Louis Vuitton Malletier ("Louis Vuitton" or "Plaintiff") and Defendants The Flea Market, Inc. d/b/a The San Jose Flea Market, Brian Bumb, Timothy Bumb, George Bumb, Jr., and Patrick DeTar ("Defendants") submit this Joint Case Management Statement.

## 1. JURISDICTION AND SERVICE.

The claim herein arise under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* for contributory infringement of trademarks registered in the United States Patent and Trademark Office. Accordingly, this Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332 and 1338.

Service has been effected on all named defendants. Plaintiff agreed to voluntarily dismiss Jeff Bumb pursuant to a tolling agreement. Bumb & Associates filed a Rule 12(b)(6) motion for failure to state a claim, which the Court granted on June 10, 2009. All of the remaining defendants have answered.

## 2. FACTS / FACTUAL ISSUES IN DISPUTE.

### A. **Plaintiff's Short Factual Summary**:

Plaintiff Louis Vuitton is one of the most well-known manufacturers of luxury items, including high quality luggage, handbags, and wallets, among other things. Defendants are the owners and operators of the San Jose Flea Market (the "Market"). It is well-known – including by Defendants – that the sale of counterfeit goods, including goods infringing Louis Vuitton's trademarks, is rampant at the Market.

Louis Vuitton accordingly has sued Defendants for contributory trademark infringement because -- despite Defendants' actual and constructive knowledge that many of their vendors have been unlawfully selling products bearing counterfeit Louis Vuitton trademarks -- Defendants have continued to supply such vendors with the marketplace (including not only the site but also extensive facilities and services) to sell their illegal goods. Defendants have reaped substantial financial fruits from their allowing their property to be used for trafficking in counterfeit goods, not just in their continued receipt of rental payments from their counterfeiting vendors, but also in

1   the monies Defendants received from the Market's increased visitor traffic, booth and storage
2   rentals, parking and concession revenues that are attributable to the "draw" of counterfeiting.
3         Defendants have had and continue to have the ability and power to have prevented the
4   counterfeiting of Plaintiff's trademarks on their property because they had the power to control
5   their vendors (including by evicting counterfeiting vendors from the Market).  Indeed, Defendants
6   were repeatedly notified of the specific vendors selling counterfeit items on their property, and
7   were witness to actions by law enforcement against counterfeiters at the Market.  Moreover, it was
8   obvious that the well-below market items being sold by Defendants' vendors were fakes.  Yet the
9   Defendants condoned the sale of counterfeit goods, by looking the other way and willfully
10  ignoring if not encouraging the illegal conduct taking place on their premises, and refusing to evict
11  their counterfeiting vendors or otherwise control their activities.
12        Given their knowledge and their ability to control the counterfeiting vendors' access to the
13  Market, Defendants had an obligation to act, but they did not, choosing instead to be unjustly
14  enriched from the unlawful conduct.  As a result of Defendants' commissions and omissions,
15  Louis Vuitton has suffered and continues to suffer damages, including, but not limited to, the
16  disparagement of Louis Vuitton's products by creating a false association between the counterfeit
17  goods sold at the Market (which are of inferior quality) and genuine, high-quality Louis Vuitton
18  products.

19  **B.     Defendants' Short Factual Summary:**

20        Plaintiff is seeking redress for alleged trademark infringement, but Plaintiff has not nor
21  sued any direct infringers.  Rather Plaintiff has sued seven defendants whom it alleges contributed
22  to the alleged infringement.
23        Defendants are either the entity that operates the San Jose Flea Market (the "Market") or
24  owners or managers of it.  Plaintiff's claims are based on numerous false assertions.  It is not well
25  known by each Defendant, or any of Defendants, that the sale of counterfeit goods at the Market is
26  "rampant."  If, in fact, Plaintiff can prove any direct infringement at all at trial, Defendants did not
27  know of any *particular* instances of such direct infringement in advance of their occurrence.
28  Contrary to Louis Vuitton's assertion, no Defendant witnessed actions by law enforcement against

counterfeiters at the Market.  When the Market was notified by intellectual property owners, not law enforcement, of specific vendors *allegedly* selling counterfeit items at the Market, it acted more than reasonably to address such concerns.  The Market has also reasonably implemented the measures that Louis Vuitton in particular requested be taken, even though plaintiff seeks to have such measures unfairly interfere with innocent vendors' ability to earn a livelihood.

Plaintiff also cannot establish that each Defendant, or any Defendants, had "control" of the Market's vendors to the extent required by applicable case law.  Given the small percentage of allegedly infringing products at the Market, and the fact that the Market did not know what constituted a counterfeit Louis Vuitton product, there was no practical ability to control the allegedly infringing behavior.  Contrary to Louis Vuitton's blanket assertion, it was not "obvious" which items being sold by the Market's vendors were counterfeit, if any were.  Louis Vuitton refused to train the Market to identify counterfeits, despite the Market's requests.

Bay Area residents come to the Market to purchase genuine goods, to shop at a farmer's market within the San Jose Flea Market, and to exchange ideas and enjoy family fun and entertainment.  Defendants have not obtained any financial benefits from the sale of counterfeit goods.  The Market makes money as a result of the substantial goodwill it has generated from being a part of the Bay Area community for over 50 years, not from the sale of alleged counterfeits.

C.   **Key Factual Disputes:**

Defendants identify the following factual issues that it understands are reasonably likely to be disputed based on the pleadings and communications with plaintiff's counsel to date:[1]

- The degree of control that each Defendant has exercised over each alleged primary infringer.
- Whether any primary trademark infringement occurred, and, if so, what are the

---

[1] Plaintiff does not concede that the factual or legal issues set forth herein are either genuine or relevant.  For their part, Defendants are also not making any admissions or concessions.  Plaintiff and Defendants are making a good faith effort to comply with the Northern District's Standing Order concerning the preparation of a Joint Case Management Statement.

particular instances of such infringement.

- Whether particular Defendants had the right and ability to control particular vendors in light of the small amount and percentage of infringing product.
- How the Market's conduct in seeking to prevent intellectual property infringement compares to the industry standard.
- Whether the Market uses counterfeit goods as a "draw" to customers.
- Whether each Defendant had knowledge of any particular counterfeit or infringing products on the particular day or days that primary infringement occurred, if any.
- Whether gray market, discontinued, or overstock Louis Vuitton goods are available to be purchased in the U.S. and resold at flea markets, and the Market.
- Whether Plaintiff makes training and other information reasonably sufficient to distinguish between counterfeit and genuine products readily available to flea market and swap meet owners, like the Market.

## 3. LEGAL ISSUES.

Defendants identify the following legal issues that it understands are reasonably likely to be disputed based on the pleadings and communications with plaintiff's counsel to date:

1. The standard of knowledge required to hold each particular defendant liable for contributory infringement. Plaintiff alleges that, to the extent this is an issue in dispute, it is resolved by, *inter alia,* Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); Hard Rock Café Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143 (7th Cir. 1992); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259 (9th Cir. 1996); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999); Perfect 10, Inc. v. Visa Int'l. Service, Ass'n., 494 F.3d 788 (9th Cir. 2007). In addition to one or more of the cases that plaintiff has identified, Defendants contend that Tiffany v. Ebay, 576 F. Supp. 2d 463 (S.D.N.Y 2008), resolves the issue of the standard of knowledge as applied to the facts in this case.

2. Whether control is an issue, and if so, whether any, or each, Defendant had the ability to control particular Market vendors. Plaintiff alleges that, to the extent this is an issue in

1  dispute, it is resolved by, *inter alia,* Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S.
2  844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); Hard Rock Café Licensing Corp. v. Concession
3  Services, Inc., 955 F.2d 1143 (7th Cir. 1992); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259
4  (9th Cir. 1996); Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980 (9th Cir. 1999);
5  Perfect 10, Inc. v. Visa Int'l. Service, Ass'n., 494 F.3d 788 (9th Cir. 2007).  In addition to the
6  above-citations, Defendants contend that Tiffany v. Ebay, 576 F. Supp. 2d 463 (S.D.N.Y 2008)
7  and other cases address this issue.

8      3.   Whether Plaintiff's proposed application of contributory trademark law in this
9  instance constitutes a violation of the First Amendment to the United States Constitution by
10 interfering with freedom of speech or freedom of commercial expression at a quasi-public meeting
11 place.  Plaintiff denies this is an issue in the case, and further has no relevance to these
12 proceedings.

13     4.   Whether Plaintiff's claims are barred in whole or in part by the doctrines of unclean
14 hands or estoppel because (a) the Market claims it requested from Plaintiff's agent or
15 representative that the Market be trained on how to determine whether products were counterfeit
16 or otherwise allegedly infringed Plaintiff's marks, but such person allegedly refused to provide
17 such training; and/or (b) when the Market allegedly requested that Plaintiff's agent or
18 representative investigate a particular vendor or vendors, such investigations allegedly did not
19 occur expeditiously, or were not carried out effectively.  Plaintiff denies that any purported request
20 for training is an issue in the case, and further has no relevance to these proceedings.

**4.   MOTIONS.**

On June 10, 2009, the Court granted Bumb & Associates' 12(b)(6) motion to dismiss with leave to amend.  Depending on whether Plaintiff amends, and how, Bumb & Associates may bring a further motion to dismiss.

It is premature to determine what issues may be subject to summary judgment, but both sides anticipate that they may move for summary judgment or partial summary judgment at the close of fact discovery.  Plaintiff also is considering a motion to amend the Complaint consistent with the Court's June 10, 2009 Order.

**5.  AMENDMENT OF PLEADINGS.**

The parties propose that the deadline for amending the pleadings be November 1, 2009.

**6.  DOCUMENT RETENTION.**

The parties have implemented document retention plans to prevent the inadvertent destruction of evidence (in both paper and electronic form) that is relevant to the issues raised in this action.  The parties do not anticipate that metadata will be relevant to disputed issues of fact in this case.  They have accordingly agreed that in producing electronic documents, including emails, they will in the first instance produce paper copies, or .pdfs, of emails.  They also have agreed to preserve metadata so that it can be subsequently produced in the event that it becomes relevant.

**7.  DISCLOSURES.**

The parties exchanged their initial disclosures on Wednesday, June 17, 2009.

**8.  DISCOVERY.**

  **A.  Subjects and Schedule for Discovery**

The parties agree that discovery will be needed on liability, damages, and affirmative defenses that Defendants may assert.  As of June 1, 2009, the date of the parties' Rule 26(f) conference, fact discovery began.  The parties propose that the fact discovery deadline be December 4, 2009.

  **B.  Discovery Taken to Date**

As of the date that this statement is being filed, the parties have served the following discovery:

The Flea Market, Inc.'s First Set of Demands for Production of Documents to Plaintiff

The Flea Market, Inc.'s First Set of Special Interrogatories to Plaintiff

Plaintiff's First Set of Demands for Production of Documents to each Defendant.

  **C.  Electronically Stored Information**

The parties do not believe that there are any specific issues requiring the Court's attention at this time related to the discovery or production of electronically stored information.

  **D.  Limitations on Discovery**

The parties do not propose any limitations on discovery other than those set forth in the

1  Federal Rules of Civil Procedure and the Local Rules of this Court.

2      **E.**     **Protective Order**

3      To protect their or third parties' respective confidential information, the parties intend to

4  agree on a protective order, based largely on the protective order provided on the Court's web site.

5  **9.**     **CLASS ACTIONS**

6      Not applicable.

7  **10.**     **RELATED CASES.**

8      The parties are not aware of any related cases.

9  **11.**     **RELIEF.**

10      Plaintiff seeks both monetary and injunctive relief in this action, the amount to be

11  determined by fact and expert discovery, along with statutory damages, according to proof.

12      Defendants dispute whether Plaintiff is entitled to any damages or injunctive relief and

13  reserve their rights to dispute Plaintiff's calculations of damages with the assistance of an expert

14  witness.

15  **12.**     **SETTLEMENT AND ADR.**

16      The parties engaged in informal settlement negotiations before the action was filed.  The

17  parties have agreed to pursue a private mediation in mid to late August 2009.  The parties expect

18  to agree upon a mediator by the time of the Case Management Conference.

19  **13.**     **CONSENT TO A MAGISTRATE JUDGE FOR ALL PURPOSES.**

20      The parties have not consented to a Magistrate Judge for all purposes.

21  **14.**     **OTHER REFERENCES.**

22      None.

23  **15.**     **NARROWING OF ISSUES.**

24      Prior to the Pretrial Conference, the parties will attempt to reach agreement on various

25  matters that will expedite the presentation of evidence at trial, including stipulations of fact,

26  authenticity and admissibility of documents, and/or presentation of evidence in the form of Fed. R.

27  Evid. 1006 summaries.

28

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

07912.006.1187138v1      8      Case No. C09-01062 CW
**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND RULE 26(f) REPORT**

16. **EXPEDITED SCHEDULE.**

Neither side is advocating particular streamlined procedures at this time.

17. **SCHEDULING.**

The parties propose the following schedule:

| Event | Parties' Proposal | Comments |
| --- | --- | --- |
| Deadline to Amend Pleadings | November 1, 2009 | |
| Fact Discovery cutoff | December 4, 2009 | |
| Deadline to file Dispositive Motions | December 18, 2009 | Oppositions due on January 17, 2010, and reply briefs on January 28, 2010. |
| Expert disclosures | December 11, 2009 | |
| Disclosure of rebuttal experts | January 8, 2010 | |
| Expert Discovery cutoff | February 11, 2010 | |
| Hearing on Dispositive Motions | February 11, 2010* | |
| Pre-Trial Conference | Tuesday, March 23, 2010* | |
| Trial Begins | April 12, 2010* | |

(*) Subject to the Court's schedule

18. **TRIAL.**

Defendants have requested a trial by jury.  The parties estimate that the case will take approximately 10 court days, or two weeks, to try.

19. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.**

All parties have already filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

Plaintiff discloses the following persons, firms, partnerships, corporations (including parent corporations) or other entities are currently known to: (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: (1) Plaintiff Louis Vuitton Malletier; (2) LVMH Moet Hennessy Louis Vuitton, of which Plaintiff Louis Vuitton Malletier is an indirect wholly-owned subsidiary; (3) Bumb & Associates; (4) Defendant The Flea Market, Inc. d/b/a The San Jose Flea Market; (5) Defendant

Brian Bumb; (6) Defendant Timothy Bumb; (7) Defendant George Bumb, Jr.; and (8) Defendant Patrick DeTar.

Defendants certify that, other than the parties themselves, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities are currently known to: (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Leon Schaper, AnneMarie Bumb, and Lorraine Bumb Trust. In addition, The Flea Market, Inc. has tendered the matter to Fireman's Fund Insurance Company, an insurer with which it has a Comprehensive General Liability policy.

## 20.   OTHER MATTERS.

The parties have not, at this time, identified any other matters that require the Court's attention.

DATED: July 8, 2009             By:     /s  Howard A. Slavitt  s/

COBLENTZ, PATCH, DUFFY & BASS LLP
Howard A. Slavitt (State Bar No. 172840)
ef-has@cpdb.com
One Ferry Building, Suite 200
San Francisco, CA  94111-4213
Telephone:  (415) 391-4800
Facsimile:  (415) 989-1663

Attorneys for Defendants THE FLEA MARKET, INC. D/B/A THE SAN JOSE FLEA MARKET, BUMB & ASSOCIATES, BRIAN BUMB, TIMOTHY BUMB, GEORGE BUMB, JR., and PATRICK DETAR

DATED: July 8, 2009             By:     /s  Mark A. Neubauer  s/

STEPTOE & JOHNSON LLP
Mark A. Neubauer (State Bar No. 73728)
mneubauer@steptoe.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA  90067
Telephone:  (310) 734-3210
Facsimile:  (310) 734-3300

Attorneys for Plaintiff LOUIS VUITTON MALLETIER